STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, ss                                     DOCKET NO. CARSC-CV-13-00025

DOROTHY W. PETERSON[1], et al      )
                      Plaintiffs   )
                                   )
                                   )
                                   )
                                   )
vs.                                )              DECISION
                                   )
                                   )
                                   )
COUNTY LAND CO. INC[2]             )
                      Defendant    )


     Pending before the court is the Plaintiff's complaint contending that the Defendants have

failed to comply with a settlement agreement reached in earlier litigation (See Peterson v.

County Land Co. Docket No. RE-09-013.) involving the same land that is the subject of this

litigation. In Count I, the Plaintiff seeks a declaratory judgment declaring the various rights of

the parties pursuant to that settlement agreement. In Count II, the Plaintiff contends that the

Defendants are in breach of the settlement agreement and that he is entitled to an award of

damages for that breach and/or to a judgment of specific performance.

     The particular circumstance that has given rise to this litigation is that the Plaintiff and

Defendants are adjoining landowners. The Defendants' land is higher than the Plaintiff's land

and from time to time, water runs off from the Defendants' land onto the Plaintiff's land causing,

among other things, erosion and the deposit of silt upon the Plaintiff's land. In the initial

---

[1] Dorothy Peterson died during the pendency of this litigation; the action is maintained by her surviving spouse, the Plaintiff David Peterson

[2] During the pendency of this litigation, the named Defendant County Land Co. Inc. transferred its ownership of the land that is the subject of this litigation to Jay McCrum, David McCrum and Robert Lunney. Through counsel, these individuals have submitted themselves to the jurisdiction of the court without requirement of service of process or amendment of the pleadings. These individuals have agreed that they will be subject to the court's ruling jointly and severally. As a result of this stipulation, the Plaintiffs have withdrawn and will not be prosecuting Counts III and IV of their complaint.

1

litigation, the Plaintiff contended that the Defendants' use of their land caused the run off and resulting deleterious effect upon Plaintiff's land significantly in excess of what was occurring based upon the lay of the land in its natural state.

The parties settled that litigation on September 14, 2011 by entering into the Settlement Agreement that is attached to the complaint as Exhibit A1. The Defendants acknowledge that the Settlement Agreement is a "valid enforceable agreement." The substance of that agreement provides as follows:

> The undersigned parties agree to settle any and all claims now the subject of this litigation or that could have been as follows:
>
> 1. County Land Co. Inc. shall pay to the Plaintiffs the sum of $40,000 forthwith.
>
> 2. County Land Co. Inc.'s insurer shall pay to the Plaintiffs the additional sum of $50,000 forthwith. Upon payment of this total sum of $90,000 the Plaintiffs shall deliver to the Defendant a docket entry dismissing this litigation with prejudice. Subsequent to the termination of litigation, the Parties shall remain obligated to each other as provided for in Paragraphs 3 and 4.
>
> 3. Under the direction and supervision of the Natural Resources Conservation Service (NRCS), County Land Co. Inc *will construct a diversion ditch* (emphasis supplied) along the southerly bound of the Plaintiff's property generally as indicated on Exh. A.attached hereto. County Land Co. Inc *shall also construct three new silt basins* (emphasis supplied) as indicated on Exh. A. *These water control structures will meet at least minimal NRCS standards.*(emphasis supplied) Additionally, County Land Co. Inc. will execute and deliver to the Plaintiffs a release deed without covenant that will grant to the Plaintiffs an Easement Appurtenant (an easement that will run with the land) for the purpose of periodically maintaining the diversion ditch and silt basins. By accepting this deed, the Plaintiffs agree for themselves and for their heirs and assigns that they will in fact maintain the diversion ditch and silt basins at their own expense. Performance of this part of the settlement agreement shall be performed as soon as reasonably possible but in no event later than April 1, 2012.
>
> 4. The Plaintiffs shall hold harmless and indemnify the Defendant for any claims or causes of action brought by any person against the Defendant and that arise out of the Plaintiffs' actions in maintaining the diversion ditch or silt basins.

2

Attached to the Settlement Agreement as Exh A is an aerial photograph of the subject property. The parties placed the following notations upon the exhibit:

On the left side of the Exhibit, the parties noted, "Approximate location of New Silt Basins"

Two black lines lead from this notation to the approximate sites for the creation of two new silt basins. Towards the middle of the exhibit, the parties noted,

"NRCS will determine flow direction and ditch will go to applicable basin.

There are dotted lines running from this notation towards one of the two new silt basins on the left side of the exhibit and towards a third basin designated as "New Basin". To the right of this notation appears another notation of "New Ditch". This is accompanied by a line drawn upon the exhibit to illustrate the location of that "new ditch". To the right of that notation there appears another notation of "Existing Basin".

Each party called an expert witness in support of their respective positions. The Plaintiff called Brian Stewart, a professional engineer with training and experience in surface water runoff. The Defendants called David Rocque, the Maine State Soil Scientist and who is also a licensed site evaluator and licensed professional forester. The court also received testimony from the Plaintiff David Peterson and from the Defendant Darrell McCrum. In addition, accompanied by the expert witnesses and the parties, the court conducted a view of the site on the morning of the first day of trial.

The terms of the Settlement Agreement that are at issue are those set forth in the following language:

Under the direction and supervision of the Natural Resource Conservation Service ( hereinafter "NRCS"), County Land Co. will construct a diversion ditch along the southerly bound of the Plaintiff's property generally as indicated on Exh. A attached

3

hereto. County Land Co shall also construct three new silt basins as indicated on Exh. A. These water control structures will meet at least minimal NRCS standards.

The essence of the agreement therefore called for the Defendants to construct one new ditch and three new silt basins. Darrell McCrum acknowledged that the Defendants didn't do everything that they were required to do. Mr. McCrum testified that he built two sediment basins, not three as required by the settlement agreement.[3] His testimony by itself therefore establishes a breach of the settlement agreement. Mr. McCrum described the efforts that he made to comply and the court has no hesitancy in concluding that Mr. McCrum was acting in good faith and doing the best that he could to fulfill the terms of the agreement. He testified that he didn't build the third basin because he believed it would have been counterproductive and would serve no purpose because of the particular lay of the lands in that location.[4]

This court is not concluding that Mr. McCrum was wrong about his assessment; it is simply concluding that the Defendants didn't build a third silt basin as they promised to do. A contracting party is not at liberty to alter unilaterally the terms of a contract because it may have become apparent to them that a bargained for benefit is actually not a "benefit" to anyone.

Mr. McCrum acknowledged that he is not a trained engineer or a person possessing any particular expertise in doing the work contemplated by the Settlement Agreement. He simply did the best that he could. Unfortunately, that is not what the Settlement Agreement called for.

The Settlement Agreement called for a ditch and three silt basins constructed in accordance with NRCS standards. The court notes that NRCS's contribution to this case has been disappointing to all concerned and that counsel and the parties have made a good faith effort to enlist that agency in the remedial efforts contemplated by the Settlement Agreement.

---

[3] See Trial Transcript, Vol II, page 34, line 10.
[4] See Trial Transcript, Vol II, page 37, lines 11-13.

4

For reasons that remain unclear, NRCS has resisted becoming further involved in this case in spite of repeated efforts to get the agency to weigh into the process of achieving a satisfactory resolution[5].

The Defendants have argued that the doctrine of impossibility or impracticality of performance excuses their breach. The court is not persuaded that this defense is availing to the Defendants. It is clear that NRCS personnel did not provide "direction or supervision" to the Defendant's remedial efforts. Indeed, it appears that to the surprise of everyone, they essentially refused to provide this assistance. This unexpected development did not mean however, that the ditches and silt basins could not have been constructed by someone according to the NRCS standards.

Mr. Stewart supplied the contents of Plaintiff's Exhibit 4. Included within this exhibit is "Natural Resources Conservation Service Conservation Practice Standard" for Sediment Basins (Code 350) and Natural Resources Conservation Service Conservation Practice Standard" for Diversion [ditches] (Code 362). These documents provide detailed instruction on how the NRCS recommends the construction of sediment basins and diversion ditches. These are public documents and readily available to all.

The Defendants promised to construct a ditch and three silt basins according to these standards. They haven't done so. That NRCS did not provide "direction or supervision" does not foreclose that someone else might have been able to perform the work in accordance with the standards. The essence of what the parties contracted for was the particular construction not simply the supervision. The "direction and supervision" piece was intended to make sure that the work was done correctly. In this court's view, that NRCS refused to provide "direction and

---

[5] The court is aware that even an appeal to the offices of Senator Susan Collins for help was unavailing.

5

supervision" does not excuse the Defendant from their obligation to undertake the particular construction. The court is therefore unpersuaded that the doctrine of impossibility affords the Defendants a defense to this action. The court concludes that the Defendants are in breach of the settlement agreement because they failed to build a third silt basin and because all of the work they did fails to comply with NRCS standards.

The Plaintiff has the burden of proof in this matter. The Plaintiff must prove not only that there has been a breach of the agreement, but also that he has been damaged as a result and is entitled to compensatory damages or is otherwise entitled to equitable relief.

The Plaintiff has offered the testimony of Mr. Stewart in support of his claim for damages. Mr. Stewart is obviously a highly qualified engineer with considerable expertise regarding surface water runoff. He has presented a detailed plan and proposal for remediating the particular problem that exists between these two landowners. That said, however, his plan represents a different undertaking than that for which the parties contracted. Mr. Stewart's plan, laid out in Court's Exh. 1 is labled, "Revised Basin Location" and notes that the "Easterly Pond and Diversion [has been] Modified From Previous Design to Reduce Impact on Peterson Lot" and that "Westerly Ponds [have been] Reconfigured to Reduce Impact on Fields and To Disperse Flow More evenly into Existing Drainage Paths".

The Settlement Agreement that is the basis for this litigation cannot be "revised", or "modified", or "reconfigured" and then enforced according to its "new terms." From hindsight, it might be said that Mr. Stewart should have been consulted at the outset before the parties undertook to make their settlement. At this point, however, the Plaintiff cannot claim that he is entitled to the better ideas of Mr. Stewart, he is restricted to the terms of the original agreement that call for the ditch and the three basins as depicted on Exh. A.

For this same reason, the Construction Cost Estimate set forth in Plaintiff's Exh. 6 is not particularly relevant to this action. The construction estimates are for Mr. Stewart's proposed new remediation proposal not for the construction or remediation of the silt basins and ditch set forth in Exh. A. Accordingly, the court does not find that it can utilize Mr. Stewart's cost estimates as a measure of damages associated with the Defendant's breach. Accordingly, there is no record evidence of financial loss or cost associated with Defendant's breach. The Plaintiff has therefore failed in his proof that he is entitled to compensatory damages.

Moreover, it seems worth noting that although Mr. Stewart identified deficiencies in Mr. McCrum's remedial efforts and pointed to evidence that those efforts may have failed in their intended purpose, the court is not persuaded by the record evidence in this matter that all of the "runoff" about which the Plaintiff complains is attributed to the Defendants' actions or to their failure to perform their agreement.

The court also found Mr. Rocque to be a persuasive witness. He testified that a significant part of the Plaintiff's gravel road leading into his property was built in a wetland and not very far above ground. He testified that the ditches that he observed, and for which the Defendants bear no responsibility, were susceptible to becoming unstable and therefore a likely source of sediment in runoff during Spring thaws. Additionally, he opined that a nearby power line might also be the source of some of the runoff about which the Plaintiff complains. Accordingly, the court declines to find that the Defendants' actions or failure to act have caused all of the problems that are of concern to the Plaintiff.

It is worthy of note as well, that the parties did not contract for the "success" of their settlement plan. They contracted for particular actions to be taken in hope that those actions would be successful. The Defendants did not guarantee results; they promised four different

7

constructions in particular locations. As Mr. Stewart ably points out, there were probably better ideas that might have been implemented. It is entirely possible, that had the Defendants completed their construction in full accord with NRCS standards, that runoff would still have occurred either because their plan was inadequate to begin with or because there were multiple sources of runoff with sediment from locations not within that original plan and therefore outside the parameters of the Defendants' responsibility.

Notwithstanding that the Plaintiff has failed to prove to this court that there is financial loss associated with the Defendants' breach or to prove the cost of doing the work they originally promised to perform, the court nonetheless concludes that the Plaintiff is entitled to some equitable relief.

As each party has acknowledged that it is within the court's authority to order specific performance. In this court's view, because of the inadequacy of a compensatory damage award based on the record evidence, this is the most appropriate form of relief. Accordingly, the court makes the following Order.

On or before June 30, 2019, the Defendants shall perform the work called for in the parties Settlement Agreement of September 14, 2011. Specifically, the Defendants shall construct (or complete construction) of a diversion ditch and three silt basins in the locations depicted in Exh. A attached to the Settlement Agreement. The Defendants shall be responsible for performing this work in accordance with the NRCS standards (Code 350 and Code 362) referenced herein. In the event that the Plaintiff remains unsatisfied with the work that the Defendants perform, he will be afforded the right to perform the work himself and at his own initial expense and then to seek reimbursement from the Defendants, provided that before undertaking any such remedial efforts on his own, he shall first notify the Defendants of the

8

particular deficiencies that he maintains remain and he shall afford the Defendants the opportunity to perform that work themselves. Failure to provide this notice to the Defendants or to provide the opportunity for remedial work shall result in the loss of any right of reimbursement by the Plaintiff from the Defendants.

The entry shall be: Judgment of specific performance is rendered in favor of the Plaintiff together with costs.[6]

Date: September 7, 2018

E. Allen Hunter
Justice, Superior Court (Active Retired)

JUDGMENT ENTERED
DATE: 9/10/18

---

[6] The costs shall be limited to those provided for by rule, however, the court does not intend to award expert witness fees associated with Mr. Stewart's participation in that the work that he did was not directly related to the specific work required by and set forth in the Settlement Agreement.

9